

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 2 1 2011

FILED
DOCKETED       DATE        INITIAL

**U.S. Department of Justice**

*United States Attorney*
*District of Montana*

| | | |
|---|---|---|
| LEIF M. JOHNSON<br>Assistant U.S. Attorney | P.O. Box 1478<br>Billings, Montana 59103-1478 | 406-657-6101 |

July 18, 2011

Ms. Molly Dwyer, Clerk
Ninth Circuit Court of Appeals
95 Seventh Street
San Francisco, CA 94103-1526

Dear Ms. Dwyer:

     This letter is to request publication of the memorandum disposition in *United States v. Labuff*, No. 10-30274 (9th Cir. July 1, 2011). Pursuant to Ninth Circuit Rule 36-2, the *Labuff* opinion "establishes, alters, modifies or clarifies a rule of law." As explained below, *Labuff* clarifies a rule of law because, when read in conjunction with *United States v. Cruz*, 554 F.3d 840, 846 (9th Cir. 2009) and *United States v. Maggi*, 598 F.3d 1073 (9th Cir. 2010), it helps define how much evidence of Indian status the government needs to prosecute a case of violent crime in Indian country. Presently, as the court in *Maggi* observed, "[w]e have little guidance as to the quantum of evidence necessary to sustain Indian status jurisdiction." 598 F.3d at 1083.

     The federal government prosecutes a broad range of violent crime in Indian Country under 18 U.S.C. § 1153. As a threshold element for every such offense, the United States must prove beyond a reasonable doubt that the defendant is an Indian person within the meaning of the law. In *United States v. Bruce*, 394 F.3d 1215 (9th Cir.2005), this Court established the test for determining an individual's Indian status: the defendant must have a sufficient "degree of Indian blood" and "tribal or federal government recognition as an Indian." *Id*. at 1223, 1224 (quoting *United States v. Keys*, 103 F.3d 758, 761 (9th Cir.1996)). According to the court in *Bruce*, the second prong of that test consists of four sub-parts "in declining order of importance:" "1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition as an Indian through residence on a reservation and participation in Indian social life." *Id*. at 1224.

This Court applied the *Bruce* test to violent crime prosecutions under 18 U.S.C. § 1153 in *Cruz*, which resulted in a reversal under facts very similar to those in *Labuff*. In *Cruz*, the defendant was not enrolled in the Blackfeet Tribe, but had descendant status, which entitled him to certain tribal benefits. 554 F.3d at 846. Thus, Cruz was eligible to receive some benefits reserved exclusively for Indians, like medical care at the Indian Health Services clinic, some educational grants, and hunting and fishing within the reservation. *Id.* The government did not offer evidence that Cruz had ever actually used any of those benefits, but there was evidence that Cruz was prosecuted by the tribal court on a single occasion, went to school on the reservation, and worked as a firefighter for the Bureau of Indian Affairs. *Id.* at 846-47. Analyzing that evidence, the court concluded that "Cruz does not satisfy any of the four *Bruce* factors." *Id.* at 847.

In factual circumstances similar to *Cruz*, the court in *Maggi* also reversed. There, the government showed that Maggi had "(a) status as a descendant member of the Blackfeet Tribe; (b) one instance of accessing Indian Health Services; (c) prosecutions in tribal court, without evidence regarding the result of those prosecutions or whether jurisdiction based on Indian status was determined by the court; and (d) testimony based on second-hand knowledge that Maggi participated in some tribal ceremonies." 598 F.3d at 1083. The court held that "[t]his sparse collection does not provide sufficient evidence of any of the factors set out in *Bruce*." *Id.*

Very similar evidence led to a different result in *Labuff*. Like Cruz and Maggi, Labuff is not enrolled in the Blackfeet Tribe, but enjoys descendant status. At trial, the government showed that Labuff was not only eligible for non-emergency medical care at the Indian Health Services clinic, but that he had actually used it. No. 10-30274, slip op. at 3. The court held that this was enough to establish the second and third sub-parts of the *Bruce* test. *Id.* In addition, the government established that Labuff was "arrested, prosecuted, and convicted under the jurisdiction of the tribal courts," which the court found to be "strong evidence of tribal recognition." *Id.* at 4. Thus, the court concluded that "the evidence was sufficient for any rational fact-finder to have found, beyond a reasonable doubt, that he is an 'Indian person.'" *Id.*

Taken together, *Cruz, Maggi,* and *Labuff* help define the quantum and quality of the evidence necessary to proceed with a violent crime prosecution in Indian country. If a non-member has descendant status and, thus, is eligible for

**July 18, 2011**
**Page 3**

benefits reserved only to Indian persons, the government must have some evidence that the defendant actually "accessed" those benefits in a significant way. In addition, repeated prosecution in tribal court, as in *Labuff*, is strong evidence of federal recognition – especially where the defendant does not contest tribal court jurisdiction – while a single prosecution, as in *Cruz*, may be of little or no consequence. *Labuff* helps draw the line as to what it means to be an Indian person for the purposes of federal prosecution. As a published opinion, it would provide valuable guidance to investigators and prosecutors in the field and avoid the unwarranted expenditure of scarce judicial resources.

      For all of the foregoing reasons, the United States respectfully requests publication of *Labuff* pursuant to Circuit Rule 36-2.

      Sincerely,

MICHAEL W. COTTER
United States Attorney

LEIF M. JOHNSON
Assistant U.S. Attorney

LMJ:sdt